IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONALD L. LAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  05-3225-CV-S-ODS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER AND OPINION REVERSING AND REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY FOR RECONSIDERATION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

This case represents Plaintiff's second attempt to qualify for benefits. His initial application was filed in December 1999, and was denied by an ALJ on March 10, 2001. Judicial review was not sought, so the ALJ's decision became the Commissioner's final decision. Plaintiff filed his instant application for disability and supplemental security income benefits on February 12, 2003. He asserts an onset date of December 13, 1999, but in light of the prior decision the relevant inquiry must focus on Plaintiff's condition commencing on March 11, 2001.

The ALJ denied Plaintiff's application, concluding (1) Plaintiff's subjective complaints were inconsistent with the record, (2) the opinions offered by the medical professional who primarily treated Plaintiff were inconsistent with the record as a whole, and (3) Plaintiff retained the residual functional capacity to perform light work. These conclusions are not supported by substantial evidence in the current record.

1.  The ALJ relied extensively on medical records from before March 11, 2001, including particularly medical records from examinations that occurred in the Fall of 2000. These reports cannot support findings about Plaintiff's condition in the relevant time period, particularly given that Plaintiff's condition involves degenerative disk disease and

should be expected to deteriorate over time. It may be that Plaintiff's condition has not degenerated to the point that he became disabled on or after March 11, 2001, but the Commissioner cannot make a contrary finding by relying on his condition prior to the relevant date. Similarly, the ALJ cannot discount Plaintiff's credibility based on conflicts between (1) what he told doctors in Fall 2000 prior to the denial of his first application and (2) what he stated during the May 2004 hearing on the second application.

2.  The ALJ's characterization of the medical records is somewhat incomplete. The ALJ acknowledged Plaintiff suffers from degenerative disk disease at C5-6 and C6-7, but downplayed the significance of this condition by observing, correctly, that MRIs indicate Plaintiff has only mild stenosis and spondylosis at those levels. However, a fair review of the record suggests the degenerative disk disease is deserving of greater significance than was accorded by the ALJ. For instance, on February 16, 2004, Dr. Benjamin Lambert observed a "reduced range of motion to about 30 to 40% of the normal range of motion in the cervical spine in all planes. He has tenderness in the lower cervical facet region, but seems to have more tenderness in the spinous process at T7 down to about T4." Dr. Lambert also found reduced range of motion in Plaintiff's shoulder. His review of Plaintiff's MRI revealed "severe disk degeneration at C5-6 and C6-7. The C6 vertebra reveals Modic-type 2 changes." Conservative treatment was recommended, but it appears this decision was driven in part by a blood condition that "require[s] treatment prior to any invasive procedure," including a simple epidural injection.[1] Nonetheless, Dr. Benjamin indicated that surgery might be required, depending particularly upon the

---

[1] A report from a hematologist (a Dr. Gomez; the first name is unreadable) indicates Plaintiff has a blood disorder that causes "abnormal coagulations" and warns that certain steps must be taken prior to any surgical or invasive procedure. R. at 261. At the hearing, Plaintiff testified that he was scheduled for surgery on his neck, but Dr. Gomez indicated that it should not take place. R. at 312-13. The ALJ found this to be "contradicted" by the report appearing at page 261 of the record, but this is not a fair characterization. The report indicates certain precautions must be taken before Plaintiff undergoes surgery, and there is no indication that this information was known before the surgery or that the necessary precautions were going to be taken.

2

results of a discography. R. at 229-30. There is no indication that a discography was performed, much less its results.

3. Plaintiff is treated by a nurse practitioner (Mindy Kendrick), who prescribes medications for his pain (primarily Vicodin) and his depression (primarily Wellbutrin). A nurse practitioner is not considered an "acceptable medical source" and therefore Nurse Kendrick's opinions and assessments are not entitled to deference. E.g., Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003). Nonetheless, as conceded by the Commissioner, Nurse Kendrick's observations are entitled to consideration. In finding those observations to not be credible, the ALJ relied upon medical evidence accumulated well before she began "treating" Plaintiff. In fact, Nurse Kendrick's impressions and recommendations are consistent with, and were often endorsed by, reports of doctors who examined Plaintiff while he was under Nurse Kendrick's care.

4. The ALJ determined Plaintiff could perform light work, but offered no explanation as to how she reached this conclusion. Consequently, the Court cannot conclude this conclusion is supported by substantial evidence in the record as a whole.

The Commissioner's final decision is reversed, and the case is remanded for reconsideration in light of the issues expressed above. On reconsideration, the Commissioner should receive and consider any additional records that may bear on Plaintiff's condition.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: November 14, 2005                    UNITED STATES DISTRICT COURT